### HAYNES *v.* BREWSTER, Collector.

*(District Court, W. D. Texas, San Antonio Division.* May 4, 1891.)

CUSTOMS DUTIES—ACTION TO RECOVER.

The right of action to recover duties and charges illegally exacted (Rev. St. U. S. § 3011) is purely statutory. Id. §§ 2931, 2932, require the importer, as a condition precedent to the maintenance of suit, to duly file his protest upon each entry, and seasonably prosecute his appeal from the decision of the collector to the secretary of the treasury. *Held,* that a stipulation made between the importer and deputy-collector, after due protest and appeal in the case of one entry, that the duties and charges in succeeding entries should be controlled by the decision of the secretary therein, is not a substantial compliance with the requirements of the statute, and the importer could not maintain suit after a decision in his favor by the secretary, and a refusal of the collector to abide by the stipulation.

At Law.

*Duval West,* for plaintiff.

*A. J. Evans,* Dist. Atty., for defendant.

MAXEY, J. Suit is brought by the plaintiff against the collector of customs to recover the sum of $582.95, which, it is alleged, was unlawfully exacted by the collector as weigher's fees on certain importations of bars of lead and copper ore entered by the plaintiff at the port of Laredo, at the several dates named in the petition during the months of January and February, 1890. Upon the argument it was admitted by the plaintiff's attorney that the item of $24.15, of date February 15th, was refunded by the collector prior to the submission of the cause. The other items of the account embrace weigher's fees on six entries, extending from the 8th to the 30th of January; and for these fees, aggregating $558.80, recovery is now sought by the plaintiff. It appears from the allegations of the petition that the lead and copper ore were entered at the Laredo port for warehousing and transportation to Galveston, whence

they were to be finally exported; that the weigher's fees demanded were illegal; that they were paid in order to obtain possession of the property; and that protest was duly filed by the plaintiff with the collector "upon each and every entry," specifying the grounds of his objection to the fees demanded.

Although it is disclosed by the petition that a distinct protest as to each entry was filed with the collector, there was a failure on the part of the plaintiff to actually take an appeal to the secretary of the treasury, in accordance with the strict letter of the statute. But it is alleged that by virtue of an agreement entered into between the plaintiff and the deputy-collector touching a prior importation, on the 31st December, 1889, the former has brought himself substantially within the terms of the law, and that in pursuance of such agreement it should be ruled by the court that an appeal was actually prosecuted from the decision of the collector as to each of the January importations. In reference to the entry of December 31, 1889, of 641 bars of lead, it is shown by the petition that a weigher's fee of $18.60 was exacted by the collector, and paid under protest by the plaintiff; that the latter seasonably appealed to the secretary of the treasury, who sustained the appeal, and ordered the amount to be refunded. The agreement relied upon by the plaintiff, and the reason by him assigned for his failure to prosecute an appeal from the decision of the collector as to each of the January entries, are inserted in the language of the pleader:

"Further alleging, your petitioner shows that at the time of the filing of the protest and taking the appeal in regard to this entry, made December 31, 1889, it was agreed and fully understood between your petitioner and the deputy collector of customs, who was acting for and by authority of the defendant herein, that said appeal was to apply to and cover all such collections or charges of weigher's fees that might arise or should be made against or collected from your petitioner at the Laredo port, until a decision of the appeal should be received from or made by the treasury department at Washington; that said appeal was passed upon, and sustained, on February 27, 1890; that then petitioner applied for the amount he had paid for weigher's fees, as shown by the table hereinbefore mentioned, viz., $582.95, same being the amount of weigher's fees exacted from petitioner pending said appeal, from December 31, 1889, to February, 27, 1890, which amount it was agreed and understood between the deputy-collector and plaintiff would be refunded to your petitioner in case the appeal was well taken. On account of which agreement and understanding, your petitioner says he did not effect his appeal in each special case, considering that such agreement and understanding was, in effect, an appeal in each separate overcharge as set out; but said amount the defendant refused and failed to refund to your petitioner. Your petitioner further shows that he then made application to the secretary of the treasury, as shown by his letter of March, 1890, attached hereto, marked 'Exhibit B,' and prayed to be made a part of this petition, asking that he be allowed the amount of overcharges, which were unlawful and unjust; that the same was refused on the ground that your petitioner had not appealed in each case, though the department admitted that said charges were unauthorized and illegal. All of which appears from department letter before mentioned, and attached hereto, marked 'Exhibit A,' and as is also shown by letter from department to your petitioner dated March 27, 1890, which is hereto attached, marked 'Exhibit C,' and prayed to be made a part of this petition. Your pe-

titioner avers and shows that, by virtue of said understanding and agreement, he did make his appeal against the exactions of weigher's fees in each separate case, and that it was expressly understood by the deputy-collector, acting for this defendant, that such appeal, while pending, was to apply to all sui · sequent cases of like import."

Exhibits A and C, referred to in the petition, are letters addressed by the acting secretary of the treasury to the collector of customs and the plaintiff, respectively. In the former the secretary writes:

"In view of the provisions of section 2932 of the Revised Statutes, your decision as to the exaction of weigher's fees on the six importations specified above is final and conclusive against all persons interested therein, no appeals having been actually taken from said decision. The department, therefore, declines to take any action on the said six protests, and the same are herewith returned."

The latter embodies the conclusion of the secretary in the following language:

"I have to state that the decision of the collector of customs specified in sections 2931 and 2932, Revised Statutes, is the classification of the goods and ascertainment and liquidation of the duties, and the collection of fees, charges, etc., on each importation; and, unless protest and appeal are duly filed for each entry, such decision is final and conclusive, under said sections. Your application is therefore denied, inasmuch as you failed to appeal from the exaction of fees on the six entries covered by your protests."

The district attorney, in behalf of the defendant, demurs to the petition on the ground that the plaintiff failed to prosecute an appeal from the decision of the collector. The legal conclusion asserted by the plaintiff in his petition, that the agreement and understanding between himself and the deputy-collector of customs dispensed with the necessity of an appeal in each case from the decision of the collector, interposes no obstacle to the determination of the questions involved in the controversy, on demurrer. "Matters of fact well pleaded are admitted by a demurrer, but it is equally well settled that mere conclusions of law are not admitted by such a proceeding." *U. S.* v. *Ames*, 99 U. S. 45. As the demurrer admits the exaction of weigher's fees to have been made without lawful authority, it becomes unnecessary to inquire into the legality of the charges demanded. The controlling question in the case, and the one to which the argument was confined, is this: Was it necessary for the plaintiff, in order to maintain his suit, to take an appeal in each case to the secretary of the treasury from the decision of the collector demanding a weigher's fee upon the several importations? It is insisted by the plaintiff that, in view of his agreement with the deputy-collector, he is not debarred from bringing suit by the provisions of sections 2931 and 2932 of the Revised Statutes. It is the present established doctrine of the courts that suits brought by an importer against the collector of customs for the recovery of duties or dutiable charges illegally exacted are founded upon and regulated by express statutory provisions. From an examination of the adjudicated cases, it appears that under some of the earlier statutes a common-law action was maintainable. *Elliott* v. *Swart-*

*wout*, 10 Pet. 137. "This common-law right of action to recover back money illegally exacted by a collector of customs as duties upon imported merchandise rested," as declared by the supreme court, "upon the implied promise of the collector to refund money which he had received as the agent of the government, but which the law had not authorized him to exact." *Arnson* v. *Murphy*, 109 U. S. 240, 3 Sup. Ct. Rep. 184. "To correct the public inconveniences resulting from the state of legislation existing prior to 1839, the act of March 3, 1839, was passed, the legal effect of which, as construed by the court in *Cary* v. *Curtis*, 3 How. 236, was to take from the claimant all right of action against the collector, by removing the grounds on which the implied promise rested." *Arnson* v. *Murphy*, *supra*. In the case last cited it is further said by the court that—

"Congress, being in session at the time that decision was announced, [*Cary* v. *Curtis*,] passed the explanatory act of February 26, 1845, which, by legislative construction of the act of 1839, restored to the claimant his right of action against the collector, but required the protest to be made in writing at the time of payment of the duties alleged to have been illegally exacted, and took from the treasury of the secretary the authority to refund conferred by the act of 1839. This act of 1845 was in force, as was decided in *Barney* v. *Watson*, 92 U. S. 449, until repealed by implication by the act of June 30, 1864."

See, also, *Curtis* v. *Fiedler*, 2 Black, 461; *Davies* v. *Miller*, 130 U. S. 284, 9 Sup. Ct. Rep. 560; *Davies* v. *Arthur*, 96 U. S. 148. The court further says that the provision of the act of 1845, which construed the act of 1839 so as to restore to the claimant a right of action, now appears as section 3011 of the Revised Statutes, and proceeds:

"From this review of the legislation and judicial history of the subject, it is apparent that the common-law action is recognized as appropriate by the decision in *Elliott* v. *Swartwout*, 10 Pet. 137, has been converted into an action based entirely on a different principle,—that of a statutory liability, instead of an implied promise, which, if not originated by the act of congress, yet is regulated, as to all its incidents, by express statutory provisions; and among them are the conditions which fix the time when the suit may begin, and prescribe the period at the end of which the right to sue shall cease. Congress having undertaken to regulate the whole subject, its legislation is necessarily exclusive."

*Arnson* v. *Murphy*, 109 U. S. 243, 3 Sup. Ct. Rep. 188; *Porter* v. *Beard*, 124 U. S. 433, 8 Sup. Ct. Rep. 554; *Arnson* v. *Murphy*, 115 U. S. 579, 6 Sup. Ct. Rep. 185; *Nichols* v. *U. S.*, 7 Wall. 126. The action being one which must be regulated, as to all its incidents, by express statutory provisions, the question recurs, has the plaintiff so far complied with those provisions as to authorize him to maintain his suit? It is provided by section 2932 of the Revised Statutes that the decision of the collector of customs as to all fees, charges, etc.,—

"Shall be final and conclusive against all persons interested in such fees, charges, or exactions, unless the like notice that an appeal will be taken from such decision to the secretary of the treasury shall be given within ten days from the making of such decision, and unless such appeal shall actually be taken within thirty days from the making of such decision; and the decision of the secretary of the treasury shall be final and conclusive upon the matter

so appealed, unless suit shall be brought for the recovery of such fees, charges, or exactions within the period as provided for in the preceding section in regard to duties."

The words, "unless the like notice that an appeal will be taken," etc., appearing in section 2932, refer to the requirements of notice contained in the preceding section of the Revised Statutes, (2931.) It is there provided that—

"On the entry of any vessel or of any merchandise, the decision of the collector of customs at the port of importation and entry as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander, or consignee of such vessel, * * * or the owner, importer, consignee, or agent of the merchandise, in case of duties levied on merchandise, or the costs and charges thereon, shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, * * * give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein distinctly and specifically the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the secretary of the treasury."

It is not deemed material to consider that clause of section 2931 imposing a limitation as to the time within which suit must be brought. The question involved is whether suit is maintainable at all, where the party has failed to appeal from each decision of the collector of customs within the time prescribed by the statute. It is evident that protest and appeal are required by both sections; and the "like notice of appeal," prescribed by section 2932, demands that the steps necessary to enable the party to avail himself of the right to recover, conferred by the statute, (section 3011,) should be taken conformably to the requirements of section 2931. If, therefore, protest and appeal be enjoined as to "each entry" by the last-named section, they are also required as to each by section 2932. In the absence of protest and appeal, the decision of the collector under sections 2931 and 2932, which are substantially sections 14 and 15 of the act of 1864, is final and conclusive as to all parties interested, and by section 3011 no recovery can be had by suit unless such protest and appeal are taken. Whether, therefore, the rights of the plaintiff be tested by sections 2931 and 2932 alone, or by those in conjunction with section 3011, (*U. S.* v. *Schlesinger*, 120 U. S. 113, 7 Sup. Ct. Rep. 442; *Arnson* v. *Murphy*, 115 U. S. 584, 585, 6 Sup. Ct. Rep. 185,) the like result must follow; that is, the inevitable failure to maintain his suit, if he had failed to protest against the exactions of the collector, and prosecute his appeal in terms of the law. But it was contended by the plaintiff, upon the argument, that, having filed a protest and taken an appeal as to the December importation, the appeal then taken, considered in connection with the verbal agreement had with the deputy-collector set forth in the petition, should be construed into a continuing appeal, applicable to future like entries, in analogy to the principle of prospective protests, at one time recognized by the courts. It is true that, under the statutes in force prior to the act of 1864, pro-

spective protests received judicial sanction. *Marriott* v. *Brune*, 9 How. 619; *Herman* v. *Schell*, 18 Fed. Rep. 891; *Fauche* v. *Schell*, 33 Fed. Rep. 336; *Bodart* v. *Schell*, Id. 825. But it has been expressly held that they have no place under the last-named act. Upon this point the supreme court, citing *Ullman* v. *Murphy*, 11 Blatchf. 354, uses this language:

"The act of 1864, by requiring the notice of dissatisfaction to be given on each entry, necessarily prevents such a notice as to any goods from being given before the entry thereof, and precludes.a prospective protest, covering future entries or importations." *Davies* v. *Miller*, 130 U. S. 288, 9 Sup. Ct. Rep. 560.

Under sections 2931 and 2932, notice of dissatisfaction must therefore be given on each entry; and it is equally clear that a distinct appeal is required in each case to the secretary. *Arnson* v. *Murphy, supra*, appears conclusive of the question which this suit involves. The court, speaking through Mr. Justice BLATCHFORD, says:

"The statute makes the decision of the collector final and conclusive as to the rate and amount of duties, unless there is a specific protest made to the collector within ten days after the liquidation, and an appeal taken to the secretary of the treasury within thirty days after the liquidation. * * * We are of opinion that it is incumbent upon the importer to show, in order to recover, that he has fully complied with the statutory conditions which attach to the statutory action provided for. He must show not only due protest and appeal, but also a decision on the appeal. * * * But the statute sets out with declaring that the decision of the collector shall be final and conclusive against all persons interested, unless certain things are done. The mere exaction of the duties is necessarily the decision of the collector; and, on this being shown in any suit, it stands as conclusive till the plaintiff shows the proper steps to avoid it. These steps include not only protest and appeal, but the bringing of a suit within the time prescribed. They are all successively grouped together in one section, not only in section 14 of the act of 1864, but in section 2931 of the Revised Statutes; and the 'suit' spoken of in those sections is the 'action' given in Rev. St. § 3011." 115 U. S. 583, 585, 6 Sup. Ct. Rep. 185; *Wedemeyer* v. *Lancaster*, 30 Fed. Rep. 671.

From an examination of the statutes and authorities bearing upon the question in hand, the court is of the opinion that sections 2931 and 2932 of the Revised Statutes require the importer, as a condition precedent to the maintenance of suit, to duly file his protest upon each entry, and seasonably prosecute his appeal from the decision of the collector in each case to the secretary of the treasury. That a protest as to each of the January importations was filed by the plaintiff in this case is admitted by the demurrer; but it is apparent from the allegations of the petition that such protests were not followed by appeals, unless the alleged agreement of the deputy-collector can be held to supersede and annul the express requirements of law. The suggestion that statutes may be thus abrogated is without merit, and entitled to but little consideration. If the treasury department, which is invested with enlarged powers by the customs laws in the formulation of rules and regulations, cannot by a regulation repeal a statute, (*Merritt* v. *Cameron*, 11 Sup. Ct. Rep. 178,) it will not be seriously contended that subordinate officials of that department are clothed with authority to annul laws. The plain-

tiff, having failed to prosecute an appeal from the decision of the collector to the secretary of the treasury, has not placed himself in a position to maintain his suit. It is proper to add that the present suit is not affected by the repeal of sections 2931, 2932, and 3011 by the recent act of congress, (St U. S., 1st Sess. 51st Cong. p. 142, § 29.) The demurrer will be sustained, and it is so ordered.